# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

WILLIAM GREG THOMAS,

        Petitioner,

v.                              Case No.:  3:17-cv-662-TJC-JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS, et al.,

        Respondents.

_____

## **<u>ORDER</u>**

Petitioner William Greg Thomas is a Florida prisoner convicted and sentenced to death for kidnapping and murdering his wife ("the wife-murder"). <u>Thomas v. State</u>, 693 So. 2d 951, 951 (Fla. 1997) ("<u>Thomas I</u>").[1] This case is about his second Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 as it relates to the wife-murder. (Doc. 1, "Second Petition.")[2] Petitioner raises two

---

[1]    Under a negotiated plea agreement, Petitioner was also convicted and sentenced to life in prison without the possibility of parole for murdering his mother ("the mother-murder"). <u>See</u> <u>Thomas v. State</u>, 838 So. 2d 535, 539 & n.4 (Fla. 2003) ("<u>Thomas II</u>").

[2]    Petitioner first sought federal habeas relief from the convictions and death sentence for the wife-murder in Case Number 3:03-cv-237-TJC-PDB ("First Petition" or "First Habeas Case"). The First Habeas Case was the subject of extensive litigation over equitable tolling and the merits. <u>See</u> <u>Thomas v. McDonough</u>, 452 F. Supp. 2d 1203 (M.D. Fla. 2006) ("<u>Thomas III</u>"); <u>Thomas v. McNeil</u>, No. 3:03-cv-237-TJC-PDB, 2009 WL 9081403 (M.D. Fla. Feb. 10, 2009) ("<u>Thomas IV</u>"); <u>Thomas v. Sec'y, Fla. Dep't of Corr.</u>, No. 3:03-cv-237-TJC-PDB, 2013 WL 11326723 (M.D. Fla. Sept. 3, 2013) ("<u>Thomas V</u>"); <u>Thomas v. Att'y Gen., Fla.</u>, 795 F.3d 1286 (11th Cir. 2015) ("<u>Thomas VI</u>"); <u>Thomas v. Att'y Gen. of Fla.</u>, No. 3:03-cv-237-TJC-PDB, 2018 WL 733631 (M.D. Fla. Feb. 6, 2018) ("<u>Thomas VII</u>"); <u>Thomas v. Att'y Gen.</u>, 992 F.3d 1162 (11th Cir. 2021) ("<u>Thomas VIII</u>"). The First Habeas Case is now closed.

grounds: (1) that throughout the trial and collateral proceedings, the State violated its obligation to disclose exculpatory or impeachment evidence under Mooney v. Holohan, 294 U.S. 103 (1935), Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), and Banks v. Dretke, 540 U.S. 668 (2004) ("Brady/Giglio claims"); and (2) that Petitioner's death sentence is illegal because the Eighth and Fourteenth Amendments require the retroactive application of Florida Statutes section 921.141 (2017)[3], which was passed after Hurst v. Florida, 577 U.S. 92 (2016), and Hurst v. State, 202 So. 3d 40 (Fla. 2016), receded from by State v. Poole, 297 So. 3d 487 (Fla. 2020) (the "Hurst-type claim").

Respondents argue that the claims in the Second Petition are untimely, procedurally defaulted, and meritless. (Doc. 8, Response.) Respondents also move to dismiss the Second Petition as an unauthorized successive habeas application. (Doc. 24, Motion to Dismiss; see also Doc. 8 at 8–13.) Petitioner has replied to the Response (Doc. 13, Reply) and responded to the Motion to Dismiss (Doc. 39, Response to Motion to Dismiss).

The Second Petition will be dismissed. Because litigation on the merits of the First Petition had concluded in this Court when the Second Petition was filed, and because neither ground in the Second Petition is exempt from the

---

[3]     Petitioner also cites Florida Statutes section 921.142, which is not relevant because that statute deals with sentencing procedures for capital drug trafficking felonies.

"second or successive" bar under <u>Panetti v. Quarterman</u>, 551 U.S. 930 (2007), the Second Petition is an unauthorized successive habeas application. <u>See</u> 28 U.S.C. § 2244(b)(3)(A). As a result, the Court lacks jurisdiction to entertain it.

## I.   Procedural History

In 1991, Petitioner planned and executed the murder of his wife, Rachel, to avoid paying his part of a settlement agreement in their pending divorce. <u>Thomas I</u>, 693 So. 2d at 951. Petitioner later "killed his own mother to keep her from talking to police about Rachel's death." <u>Id.</u> at 953. Petitioner admitted to killing his mother and, for that crime, he was sentenced to life in prison. For the wife's murder, a jury convicted Petitioner of first-degree murder, burglary, and kidnapping and recommended the death penalty by a vote of eleven to one. <u>Id.</u> at 951. The judge imposed a death sentence based on five aggravating factors and no mitigating circumstances. <u>Id.</u> (footnote omitted). On direct appeal, the Florida Supreme Court affirmed Petitioner's convictions and sentences, including the death sentence. <u>See</u> <u>id.</u> at 953. His convictions and sentences became final on November 17, 1997, when the United States Supreme Court denied certiorari review. <u>Thomas v. Florida</u>, 522 U.S. 985 (1997). Later, the Florida Supreme Court affirmed the denial of postconviction relief, finding that Petitioner had received the effective assistance of counsel during the guilt and penalty phases of trial. <u>Thomas II</u>, 838 So. 2d 535.

On March 24, 2003, attorney Mary Catherine Bonner moved this Court to be appointed as Petitioner's counsel for his yet-to-be-filed federal habeas petition, suggesting that time was of the essence. (First Habeas Case, Doc. 1.) On April 2, 2003, the Court granted that motion and appointed Bonner to represent Petitioner. (Id., Doc. 4.) Nearly a year went by before finally, on March 22, 2004—after AEDPA's[4] limitations period had expired—Ms. Bonner filed the First Petition on Petitioner's behalf, raising eight grounds for relief. (Id., Doc. 12.)[5]

---

[4]    Antiterrorism and Effective Death Penalty Act, Pub. L. 104–132, 110 Stat. 1214 (1996).

[5]    Petitioner claimed: (1) he was denied due process of law because he was not informed that his registry counsel could not represent him on the issue of whether he entered a knowing, voluntary, and intelligent plea in the mother-murder case, even though the terms of that agreement foreclosed his attack, directly or collaterally, on both of his convictions; (2) Petitioner was denied the effective assistance of counsel because his trial attorney, Mr. Richard Nichols, contrived to prevent review of his own ineffectiveness in the wife-murder case by negotiating a plea agreement in the mother-murder case, in which Petitioner waived his right to attack any guilt phase issues arising out of the wife-murder trial; (3) if Mr. Nichols did not labor under an actual conflict of interest when he induced Petitioner to plead guilty in the mother-murder case, the facts surrounding the plea establish ineffective assistance of counsel; (4) the jurors were repeatedly misinformed and misled by instructions and arguments that inaccurately diluted their sense of responsibility for sentencing, and defense counsel was ineffective for failing to object and adequately litigate this issue; (5) Petitioner was denied the effective assistance of counsel because Mr. Nichols had little interaction with Petitioner, failed to investigate the circumstances of the case, failed to prepare for the trial or penalty phase, and permitted his desire to have both opening and closing argument to override any judgment that he could have exercised; (6) the jury was prejudiced when, at the end of the trial, the prosecutor dropped a hangman's noose on counsel's table, and defense counsel was ineffective for failing to object to that action; (7) Petitioner was denied the effective assistance of counsel because Mr. Nichols failed to inform Petitioner that the guilty plea in the mother-murder case could be an aggravating factor in the penalty phase of the wife-murder trial; and (8) Florida's capital sentencing scheme is unconstitutional under Ring v. Arizona, 536 U.S. 584 (2002) (holding that the Sixth Amendment right to a jury trial precludes a sentencing judge, sitting without a jury, from finding an aggravating circumstance necessary for the imposition of the death penalty).

At first, the Court dismissed the First Petition with prejudice because it was barred by AEDPA's statute of limitations and the Court found that Petitioner did not qualify for equitable tolling. Thomas III, 452 F. Supp. 2d at 1218. But then, on Petitioner's motion, the Court agreed to reconsider the matter, scheduled an evidentiary hearing, and heard testimony from Petitioner and Ms. Bonner. In the meantime, the Eleventh Circuit decided Downs v. McNeil, 520 F.3d 1311 (11th Cir. 2008), and Holland v. Florida, 539 F.3d 1334 (11th Cir. 2008), rev'd 560 U.S. 631 (2010), which elaborated on the standard for establishing a right to equitable tolling under AEDPA. Given those decisions and the facts developed at the evidentiary hearing, the Court determined that Petitioner was entitled to equitable tolling based on the egregious misconduct of his federal habeas counsel, Ms. Bonner. Thomas IV, 2009 WL 9081403, at *5–10.

Having found that the statute of limitations did not bar the First Petition, the Court entered an order on the merits in 2013 finding that Petitioner's claims did not entitle him to relief. Thomas V, 2013 WL 11326723.[6] Thus, the Court

---

[6]    The Court concluded that Grounds One through Three were procedurally defaulted, id. at **10–13, that the underlying claims in Grounds Four and Six (alleging a Caldwell error and that Petitioner was prejudiced by the prosecutor dropping a hangman's noose on counsel's table at trial, respectively) were procedurally defaulted and the ineffective assistance claims for not objecting to the same errors failed on the merits, id. at **13–15, 31–32, that Grounds Five and Seven (which together raised eleven subclaims of ineffective assistance) failed under § 2254(d), id. at **16–31, and that Ground Eight (alleging that Florida's death-sentencing scheme violated Ring) both was procedurally defaulted and failed on the merits, id. at *32.

denied the First Petition, granted a certificate of appealability (COA) on three ineffective assistance subclaims, denied a COA on the rest of the claims, and entered judgment against Petitioner. See id. at *33.

Petitioner appealed the denial of the First Petition on the merits and Respondents cross-appealed the decision to give Petitioner the benefit of equitable tolling. In 2015, in light of more intervening decisions from the Supreme Court and the Eleventh Circuit, the court of appeals remanded the case for additional findings of fact concerning equitable tolling. Thomas VI, 795 F.3d at 1296–97. The Eleventh Circuit's remand was limited to the equitable tolling issue. Id. at 1297 n.3. As a result, the merits were outside the scope of the limited remand and remained pending before the appeals court.

After the mandate issued in Thomas VI, this Court ordered additional briefing and held another hearing about whether Ms. Bonner's conduct was egregious enough to warrant equitable tolling. (The hearing was non-evidentiary because Respondents stipulated that Ms. Bonner willfully missed the filing deadline to tee up a challenge to AEDPA's statute of limitations.) The Court made additional findings of fact and concluded "that Ms. Bonner was dishonest with her client," that "she acted in bad faith and with divided loyalty," and that "Ms. Bonner's bad faith, dishonesty, and divided loyalty resulted in her 'effectively abandoning' her client." Thomas VII, 2018 WL 733631, at *19 (M.D. Fla. Feb. 6, 2018). Thus, the Court concluded that Petitioner remained

entitled to equitable tolling. Id. at *22. The Eleventh Circuit then affirmed both the ruling that Petitioner was entitled to equitable tolling and the denial of the First Petition on the merits. Thomas VIII, 992 F.3d 1162.

While the First Petition was before this Court on the limited remand, Petitioner filed the Second Petition in a separate case. But on March 29, 2018—after the Court issued additional findings of fact in response to the limited remand and returned the First Habeas Case to the Eleventh Circuit—Petitioner moved for leave to amend the First Petition to add the new Brady/Giglio and Hurst-type claims or to consolidate this case with the First Habeas Case. (First Habeas Case, Doc. 241, Motion for Leave to Amend or Consolidate.) The Court denied that motion without prejudice to refiling, if appropriate, after the appeal was resolved. (Id., Doc. 248.) Petitioner did not renew the motion after the Eleventh Circuit decided Thomas VIII.

## II.    The Second Petition and the Parties' Arguments

Petitioner raises two grounds in the Second Petition. First, he contends that the State violated his right to due process by presenting false testimony or suppressing exculpatory or impeachment evidence, in violation of Mooney, 294 U.S. 103, Brady, 373 U.S. 83, Giglio, 405 U.S. 150, and Banks, 540 U.S. 668. (Doc. 1 at 7–57.) Federal habeas counsel[7] states that he stumbled upon the

---

[7]    Petitioner was represented by Martin McClain when he filed the Second Petition. Mr. McClain passed away in 2022. Petitioner is now represented by the Capital Habeas Unit of the Federal Defender's Office for the Middle District of Florida.

factual basis for this ground in June 2016 while conducting a routine criminal history check on Ahmad Dixon, one of the State's witnesses at Petitioner's trial. (See id. at 8–13.) Dixon testified at the guilt phase that, in late August 1993 when he was an inmate at the Duval County jail, he walked in on a conversation between Petitioner and an inmate named Adrian Cason. During that conversation, according to Dixon, Petitioner admitted "he had chopped the bitch [Petitioner's wife] in the throat" and killed her. Thomas I, 693 So. 2d at 952 n.3. When Dixon testified at Petitioner's trial, he acknowledged he was facing a federal drug charge and that he had pleaded guilty to it, but he denied facing any state charges. (See Doc. 1 at 28–29.) Petitioner's habeas counsel discovered in June 2016 that Dixon was arrested on July 17, 1993, for a state drug crime and an attempted sexual battery, that the state drug charge was filed and dropped on August 9, 1993, and that an attempted sexual battery charge in state court was dropped on January 26, 1994. (Id. at 8–13, 42–46.) Thus, Petitioner alleges, Dixon lied and the State knowingly presented false testimony when Dixon denied being the subject of state criminal charges.

Also in Ground One, Petitioner alleges that the State failed to disclose that Adrian Cason—who was himself charged with first-degree murder— struck a plea agreement in August 1993 to help the State prosecute Petitioner. (Id. at 14–20, 33–42.) In exchange for being spared the death penalty, Cason would plead guilty in his case and help gather evidence against Petitioner. So,

Petitioner asserts that Cason was acting as a State agent when he elicited Petitioner's confession in Dixon's presence in late August 1993. But because the State did not intend to use Cason as a witness for credibility reasons, Petitioner's theory goes, Cason ensured that someone else (Dixon) was present when Cason elicited the confession. That way, the other person (Dixon) could testify to the confession and Cason would reap the benefits of the cooperation agreement. All of that, Petitioner argues, violated Petitioner's Sixth Amendment right not to be questioned without the assistance of counsel under <u>United States v. Henry</u>, 447 U.S. 264 (1980). Petitioner argues that the State was obligated to share this information and, had it done so, Petitioner could have excluded Dixon's testimony about the confession.[8]

Next, Petitioner alleges that his death sentence is unlawful because it was imposed contrary to the procedures prescribed in Florida Statutes section

---

[8]     Cason did not testify at trial, but Dixon did. That said, Dixon was only one of eight witnesses to whom Petitioner had made an admission or other incriminating statement. <u>See</u> <u>Thomas I</u>, 693 So. 3d at 952 n.3. Coworkers Johnny Brewer, Joseph Stewart, and Jimmy Stewart, girlfriend Jennifer Howe, wife Christina Thomas, and inmates Bonner and Rhiles all described statements in which Petitioner said he would kill the victim, that he knew the victim had died (the victim was missing), or that he had been involved in her death. <u>Id.</u>

In addition, coworker Douglas Schraud testified that he was present when Petitioner beat, bound, and abducted the victim in the trunk of her car. <u>See</u> <u>id.</u> at 952. Later the same day, Petitioner was seen parking and abandoning the victim's car at a mall after wiping down her car with a towel. <u>Id.</u> Petitioner's palm print was found on the hood of the victim's car. <u>Id.</u> In the victim's home, there were signs of a struggle in the foyer, including blood on the baseboard and vent. <u>Id.</u> There was also a tennis shoe print in the victim's garage, and witnesses testified that Petitioner was wearing tennis shoes on the day of the murder. <u>Id.</u> When asked by police, Petitioner falsely denied owning any tennis shoes, and the next day he collected all his tennis shoes and threw them away. <u>Id.</u>

921.141 (2017), which was passed after <u>Hurst v. Florida</u>, 577 U.S. 92 (2016), and <u>Hurst v. State</u>, 202 So. 3d 40 (Fla. 2016), <u>receded from by</u> <u>State v. Poole</u>, 297 So. 3d 487 (Fla. 2020). (Doc. 1 at 57–75.) Section 921.141 codifies the holding of <u>Hurst v. State</u> by requiring that, before a person can be sentenced to death, a jury must unanimously (1) determine that the State has proven the existence of at least one aggravating factor beyond a reasonable doubt and identify each aggravating factor (if any) that was so proven, (2) determine that sufficient aggravating factors support the death penalty, (3) determine that the aggravating factors outweigh the mitigating circumstances, and (4) recommend the death sentence. <u>See</u> Fla. Stat. § 921.141(2) (2017); <u>see also</u> <u>Hurst v. State</u>, 202 So. 3d at 53–54, 57. Because the judge found the existence of the aggravating factors rather than the jury, and because the jury recommended the death sentence by an eleven-to-one vote, Petitioner argues that his death sentence goes against the post-<u>Hurst</u> version of Florida Statutes section 921.141. Petitioner insists that the Florida Legislature intended for section 921.141 to apply retroactively (with no apparent limitations). He also argues that the post-<u>Hurst</u> version of section 921.141 <u>must</u> apply retroactively to him under the Eighth Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

Respondents move to dismiss the Second Petition as an unauthorized successive habeas application. (Doc. 24.) Their argument is simple: Petitioner

10

filed the Second Petition after the Court denied the First Petition on the merits; the claims could have been or were presented in the First Petition; and he did not obtain authorization from the Eleventh Circuit to file a second habeas application. Thus, under 28 U.S.C. § 2244(b)(3)(A), Respondents contend the Court lacks jurisdiction to entertain the Second Petition.

Petitioner argues that the Second Petition is not "second or successive." (Doc. 39; see also Doc. 2 at 1–24; Doc. 13 at 3–28.) He contends his Brady/Giglio claims did not "ripen" until his federal habeas counsel discovered the exculpatory and impeachment evidence related to Ahmad Dixon and Adrian Cason in June 2016. (Doc. 2 at 19–23.) Petitioner asserts that under Panetti, 551 U.S. 930, it is wrong to treat his Brady/Giglio claims as "second or successive" because the State suppressed the exculpatory and impeachment evidence, making the factual basis undiscoverable until after he had filed the First Petition. Likewise, Petitioner argues that his Hurst-type claim did not ripen until the Florida Legislature updated Florida Statutes section 921.141 in 2017. (Doc. 2 at 23–24.) Petitioner also argues that the Second Petition is not successive because the First Petition was still pending when he filed the Second Petition. (Doc. 13 at 16–17; Doc. 39 at 18–19.)

## III. The Second Petition is Second or Successive

AEDPA constrains a district court's ability to entertain more than one habeas petition attacking the same judgment. The law provides:

**(1)** A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

**(2)** A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—

> **(A)** the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

> **(B) (i)** the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

> **(ii)** the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(1)–(2). On top of that, "[b]efore a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A). A district court must dismiss a successive habeas application "for lack of jurisdiction" if it is filed without authorization from the court of appeals. Burton v. Stewart, 549 U.S. 147, 157 (2007).

"The phrase 'second or successive' is not self-defining," but takes its "full meaning" from the Supreme Court's pre-AEDPA case law. Panetti, 551 U.S. at 943 (citations omitted). "In the usual case, a petition filed second in time and

not otherwise permitted by the terms of § 2244 will not survive AEDPA's 'second or successive' bar." Id. at 947. But there are "exceptions." Id. The Supreme Court "has declined to interpret 'second or successive' as referring to all § 2254 applications filed second or successively in time, even when the later filings address a state-court judgment already challenged in a prior § 2254 application." Id. at 944. Considerations like whether the second petition is an abuse of the writ, id. at 947, and the need to conserve judicial resources, avoid piecemeal litigation, and "lend[ ] finality to state court judgments within a reasonable time," id. at 945–46, inform whether a subsequent petition is considered "second or successive." Applying these considerations, the Supreme Court in Panetti held that a prisoner's claim that he was incompetent to be executed under Ford v. Wainwright, 477 U.S. 399 (1986), was not "second or successive" even though it was raised for the first time in a numerically second habeas petition. 551 U.S. at 947. That was so because "Ford-based incompetency claims, as a general matter, are not ripe until after the time has run to file a first federal habeas petition." Id. at 943. "Mental competency to be executed is measured at the time of execution, not years before then. A claim that a death row inmate is not mentally competent means nothing unless the time for execution is drawing nigh." Tompkins v. Sec'y, Dep't of Corr., 557 F.3d 1257, 1260 (11th Cir. 2009) (citing Panetti, 551 U.S. at 946). Thus, it would make no sense to impose "[a]n empty formality requiring prisoners to file

unripe <u>Ford</u> claims" years before the facts to be measured in relation to those claims even exist. <u>Panetti</u>, 551 U.S. at 946. But <u>Panetti</u> confined its holding to the "unusual posture" in which a <u>Ford</u>-based incompetency claim arises. <u>Id.</u> at 945; <u>see</u> <u>Tompkins</u>, 557 F.3d at 1259 ("The <u>Panetti</u> case involved only a <u>Ford</u> claim, and the Court was careful to limit its holding to <u>Ford</u> claims.").

The Eleventh Circuit applied <u>Panetti</u> in <u>Tompkins</u>, 557 F.3d 1257 (a § 2254 case involving a state inmate), and <u>Scott v. United States</u>, 890 F.3d 1239 (11th Cir. 2018) (a § 2255 case involving a federal inmate). The cases involved similar facts. In both, the prisoners filed a second habeas petition or motion to vacate based on newly discovered evidence that the government had violated <u>Brady</u> and <u>Giglio</u>. The prisoners argued that their <u>Brady</u> and <u>Giglio</u> claims were not "second or successive" because the claims were not "ripe" until they had uncovered suppressed evidence of <u>Brady</u> and <u>Giglio</u> violations. <u>See</u> <u>Tompkins</u>, 557 F.3d at 1260; <u>Scott</u>, 890 F.3d at 1246. The Eleventh Circuit rejected that argument in <u>Tompkins</u>, stating: "That is not what the Supreme Court in <u>Panetti</u> meant by 'ripe.'" 557 F.3d at 1260. The court explained:

> The reason the <u>Ford</u> claim was not ripe at the time of the first petition in <u>Panetti</u> is not that evidence of an existing or past fact had not been uncovered at that time. Instead, the reason it was unripe was that no <u>Ford</u> claim is ever ripe at the time of the first petition because the facts to be measured or proven—the mental state of the petitioner at the time of execution—do not and cannot exist when the execution is years away.

<u>Id.</u> (citations omitted). The Eleventh Circuit described Tompkins' case as "the usual case [where] a petition filed second in time and not otherwise permitted

by the terms of [28 U.S.C.] § 2244 will not survive AEDPA's 'second or successive' bar." <u>Id.</u> (quoting <u>Panetti</u>, 551 U.S. at 947). The court reasoned:

> Unlike a <u>Ford</u> [incompetency-to-be-executed] claim, the <u>Gardner</u>, <u>Brady</u>, and <u>Giglio</u> claims Tompkins wants to raise are claims that can be and routinely are raised in initial habeas petitions. The violation of constitutional rights asserted in these kinds of claims occur, if at all, at trial or sentencing and are ripe for inclusion in a first petition.

<u>Id.</u> Thus, the court held that a <u>Brady</u> or <u>Giglio</u> claim cannot avoid being characterized as "second or successive" simply because it is based on a factual predicate that was previously unknown. Likewise, the <u>Scott</u> panel found that

> [u]ltimately, <u>Tompkins</u> binds us to conclude that in § 2255 cases, all second-in-time <u>Brady</u> claims are "second or successive" under § 2255(h), even if the petitioner could not reasonably have been expected to discover the <u>Brady</u> violation and there is a reasonable probability that timely disclosure of the suppressed evidence would have resulted in an acquittal.

890 F.3d at 1259. But <u>Scott</u> described <u>Tompkins</u>'s reasoning as "fatally flawed" and called on the Eleventh Circuit to revisit the issue <u>en banc</u>. <u>Id.</u> at 1248–58. Still, <u>Tompkins</u> remains the law of this circuit.

Applying these lessons to Petitioner's case, the Second Petition must be dismissed as an unauthorized "second or successive" habeas application. A petition is generally "second or successive" when a petitioner has "twice brought claims contesting the same [sentence] imposed by the same judgment of a state court." <u>Burton</u>, 549 U.S. at 153. This is Petitioner's second application for habeas relief from the same judgment, which he filed after his First Petition was denied on the merits. The defects Petitioner attacks—the suppression of

exculpatory or impeachment evidence at trial and the jury's failure to find the aggravating factors and to unanimously recommend the death sentence—occurred at the guilt and penalty phases of trial, even if evidentiary or legal support for these claims did not emerge until later. As a result, the Second Petition is "second or successive." Because Petitioner did not obtain authorization from the Eleventh Circuit to file it, the Court lacks jurisdiction to entertain it. See 28 U.S.C. § 2244(b)(3)(A); Burton, 549 U.S. at 157.

Thus, the Court must reject Petitioner's argument that Ground One is not "second or successive" under Panetti because the factual basis for his Brady and Giglio claims was previously unavailable. Tompkins and Scott teach that a second habeas petition will not avoid being treated as "second or successive" simply because a Brady claim's factual basis was not discoverable when the first petition was filed. Rather, only defects that were nonexistent when the first petition was filed will avoid being treated as "second or successive" later. Scott v. United States, 81 F. Supp. 3d 1326, 1334 (M.D. Fla. 2015), aff'd, 890 F.3d 1239. But "[t]he violation of constitutional rights asserted in [Brady and Giglio] claims occur[s], if at all, at trial or sentencing and are ripe for inclusion in a first petition." Tompkins, 557 F.3d at 1260. Even though Petitioner contends Tompkins was wrongly decided, he "acknowledges this Court may be bound by"

it. (Doc. 39 at 2.) Thus, <u>Tompkins</u> and <u>Scott</u> bind this Court to dismiss Ground One as second or successive.[9]

Likewise, Ground Two cannot escape being treated as second or successive. Petitioner argues that the Eighth and Fourteenth Amendments require that the post-<u>Hurst</u> version of Florida Statutes section 921.141 (2017) apply to him, and that his death sentence is unlawful because it was imposed in a manner inconsistent with the statute. That is an artful restatement of the <u>Ring</u> claim from the First Petition, where he argued his death sentence violated the Sixth Amendment because the jury did not find the existence of the aggravating factors necessary to qualify Petitioner for the death penalty.[10] The

---

[9]      This Court has expressed misgivings about subjecting prisoners to § 2244(b)(2)'s (or § 2255(h)'s) demanding standards where the government suppressed the evidentiary basis of a <u>Brady</u> or <u>Giglio</u> claim until after the prisoner's first habeas application has been resolved. <u>See</u> <u>Scott</u>, 81 F. Supp. 3d at 1331, 1334–35. That said, this case does not appear to present the same situation that <u>Scott</u> did. Petitioner's federal habeas counsel was able to uncover the new information related to Ahmad Dixon and Adrian Cason through a routine investigation of criminal records. This being the case, the evidence was easily discoverable before 2017.

[10]      In <u>Ring</u>, the Supreme Court held that if a fact must be found to make a defendant eligible for the death penalty, then that fact is effectively an element of a crime (because it increases the maximum penalty) and must be proven to a jury beyond a reasonable doubt. 536 U.S. at 609. For that reason, the Supreme Court held that Arizona's death-sentencing scheme, under which a judge found the existence of any aggravating factors necessary to qualify a defendant for a death sentence, violated the Sixth Amendment right to a jury trial. But the Supreme Court later held that <u>Ring</u>, because it announced a new, non-watershed procedural rule rather than a substantive rule, did not apply retroactively to anyone whose conviction and sentence became final before <u>Ring</u> was decided. <u>Schriro v. Summerlin</u>, 542 U.S. 348, 358 (2004). Because Petitioner's convictions and sentences became final on November 17, 1997—nearly five years before <u>Ring</u>—he was not entitled to <u>Ring</u>'s retroactive application. Plus, when the Court decided the First Petition, the rule in the Eleventh Circuit was that Florida's death-sentencing scheme did not violate <u>Ring</u> because Florida required the jury to render an advisory verdict about the existence of aggravating factors and the judge had to give the jury's recommendation great weight. <u>Thomas V</u>, 2013 WL 11326723, at *32 (citing <u>Evans v. Sec'y, Fla. Dep't of Corr.</u>, 699 F.3d 1249 (11th Cir. 2012)).

17

defect challenged in Petitioner's <u>Ring</u> claim and the defect challenged in the new <u>Hurst</u>-type claim are the same or similar: that the jury did not unanimously find the existence of the aggravating factors or recommend the death sentence. These defects are not new; they have existed since Petitioner's penalty phase and sentencing. Ground Two of the Second Petition simply attacks the same (or similar) defect under a different legal theory.

True, Florida Statutes section 921.141 (2017) did not exist when Petitioner filed his First Petition. But that is only because <u>Hurst v. Florida</u>, 577 U.S. 92, and <u>Hurst v. State</u>, 202 So. 3d 40 (whose holding the statute codifies), had not been decided yet. Thus, Petitioner's claim based on section 921.141 was no more unavailable when he filed the First Petition than a claim based on <u>Hurst v. Florida</u> or <u>Hurst v. State</u>. But AEDPA requires even claims based on a previously unavailable United States Supreme Court decision to satisfy § 2244(b)(2)'s gatekeeping requirements. It would be anomalous if claims based on a new rule of constitutional law announced by the United States Supreme Court had to satisfy § 2244(b)(2) but not claims based on new state legislation (at least where the new state legislation does not change the petitioner's status

_____

Three years after this Court denied the First Petition on the merits, the United States Supreme Court applied <u>Ring</u> to Florida's death-sentencing scheme and found that it too was unconstitutional for the same reason as Arizona's. <u>Hurst v. Florida</u>, 577 U.S. at 98–99. But neither <u>Ring</u> nor <u>Hurst v. Florida</u> applies retroactively on collateral review. <u>Lambrix v. Sec'y, DOC</u>, 872 F.3d 1170, 1182–83 (11th Cir. 2017) ("<u>Lambrix VI</u>"); <u>Lambrix v. Sec'y, Fla. Dep't of Corr.</u>, 851 F.3d 1158, 1165 n.2 (11th Cir. 2017) ("<u>Lambrix V</u>").

quo).[11] Congress created a channel for bringing second or successive petitions based on new legal developments, and it chose to allow such petitions based only on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2244(b)(2)(A). "A plain reading of § 2244(b)(2) shows that there was no exception established for perceived changes in state law and retrospective application to federal habeas petitioners." Jimenez v. Jones, No. 1:18-cv-25165-DMM, Doc. 17 at 9 (S.D. Fla. Dec. 12, 2018), aff'd sub nom. Jimenez v. Sec'y, Fla. Dep't of Corr., 758 F. App'x 682 (11th Cir. 2018). To hold that a second petition based on new state legislation may proceed without satisfying § 2244(b) would subvert the

---

[11]     Petitioner cites In re Jones, 652 F.3d 603 (6th Cir. 2010), for the proposition that Ground Two is not second or successive because it attacks statutory changes that happened only after the filing of the First Petition. (Doc. 2 at 5–6, 24.) Jones is distinguishable. In Jones, the Sixth Circuit held that a petitioner needed no authorization to file a numerically second habeas petition to challenge statutory changes to Michigan's parole system, the last of which occurred after the petitioner filed his first habeas petition. 652 F.3d at 605–06. The petitioner argued that "the cumulative effect of changes made to Michigan's parole-review procedures in 1992 and 1999 … 'produce[d] a sufficient risk of increasing the measure of punishment attached' to his conviction" to violate the Constitution's Ex Post Facto Clause. Id. at 604. The Sixth Circuit concluded that under Panetti, this claim was not "second or successive" because (1) "Jones's ex post facto claim was unripe when his initial petition was filed—the events giving rise to the claim had not yet occurred," and (2) "no useful purpose would be served by requiring prisoners to file ex post facto claims in their initial petition as a matter of course, in order to leave open the chance of reviving their challenges in the event that subsequent changes to the state's parole system create an ex post facto violation." Id. at 605.

Unlike the new parole legislation in Jones, the new legislation here—Florida Statutes section 921.141 (2017)—did not create a new defect. That Petitioner was sentenced to death without a jury unanimously finding the existence of the aggravating factors and recommending the death penalty is a fact that has existed since Petitioner was sentenced. But the new parole legislation in Jones created a new defect by threatening to increase the measure of punishment attached to the petitioner's conviction. Put another way, Florida Statutes section 921.141 (2017) did not change Petitioner's status quo, whereas the new parole legislation in Jones did by threatening to extend Jones's period of incarceration.

statutory scheme erected by Congress to regulate habeas litigation. See Stewart v. United States, 646 F.3d 856, 861 (11th Cir. 2011) (rejecting the theory that a petition is non-successive any time a claim's factual or legal basis was previously unavailable, considering that the two grounds identified in §§ 2244(b)(2) and 2255(h)—a new United States Supreme Court decision and newly discovered evidence of innocence—are by definition previously unavailable but still must satisfy the second-or-successive gatekeeping criteria (citing Leal Garcia v. Quarterman, 573 F.3d 214, 221 (5th Cir. 2009))).[12]

Petitioner also argues that his Second Petition is not "second or successive" because when he filed it, the First Petition was pending on appeal and the equitable tolling issue was before this Court on a limited remand. (Doc. 13 at 16–17; Doc. 39 at 18–19.) Thus, he argues, the "second or successive" bar does not apply to the Second Petition because adjudication of the First Petition was not final.

The Eleventh Circuit "has no published opinion establishing when the adjudication of a [habeas petition] becomes final such that the 'second or successive' limitation applies to all future [petitions]." Amodeo v. United States,

---

[12]    In any event, the Florida Supreme Court and the Eleventh Circuit have rejected various iterations of the argument that Hurst v. Florida, Hurst v. State, or Florida Statutes section 921.141 must, as a matter of the Eighth Amendment, due process, or equal protection, apply retroactively to those (like Petitioner) whose convictions and death sentence became final before Ring. See, e.g., Foster v. State, 258 So. 3d 1248, 1251–54 (Fla. 2018); Hitchcock v. State, 226 So. 3d 216, 217 (Fla. 2017); Lambrix VI, 872 F.3d at 1182–83.

743 F. App'x 381, 385 (11th Cir. 2018). Rather, the court has given conflicting signals in unpublished opinions and orders. See id. at 385 n.1 (citing United States v. Terrell, 141 F. App'x 849, 850, 851–52 (11th Cir. 2005); In re Cummings, No. 17–12949 (11th Cir. July 12, 2017)).

But it seems the Supreme Court strongly suggested an answer in Gonzalez v. Crosby, 545 U.S. 524 (2005). There, the Supreme Court held that if a Rule 60(b) motion presents one or more claims for relief or seeks to revisit a district court's denial of a habeas petition on the merits, the motion must be treated as an unauthorized second or successive habeas application. Id. at 531–32. Although the Rule 60(b) motion in Gonzalez was filed after the petitioner's first habeas case was no longer pending on appeal, see id. at 527, the Supreme Court did not distinguish between a Rule 60(b) motion filed while the first petition is pending on appeal and a Rule 60(b) motion filed sometime later, see id. at 530–32. See Balbuena v. Sullivan, 980 F.3d 619, 639–40 (9th Cir. 2020) (recognizing that "the petitioner in Gonzalez filed his Rule 60(b) motion after the conclusion of his appeal from his initial petition," but that "the Court's analysis did not turn on, or even address, the timing of the Rule 60(b) motion." (emphasis in original; citation omitted)). The Supreme Court surely knew that Rule 60(b) motions can be, and often are, filed while an appeal is pending from the denial of the first habeas petition. All the same, the Supreme Court instructed that if a Rule 60(b) motion adds a new claim for relief, or attacks the

district court's resolution of a claim on the merits based on newly discovered evidence or a substantive change in the law, the motion is effectively a second or successive habeas application and must be treated as such. <u>Gonzalez</u>, 545 U.S. at 531–32. Thus, it seems to make no difference whether the first habeas petition is pending on appeal; a subsequent application for habeas relief will still be treated as "second or successive" if it presents a claim for relief from the conviction and sentence.

Indeed, <u>Gonzalez</u> explicitly approved of a lower court decision treating a Rule 60(b) motion as a second or successive habeas application where the motion was filed while the first petition was pending on appeal. <u>See</u> <u>id.</u> at 531 (citing <u>Dunlap v. Litscher</u>, 301 F.3d 873 (7th Cir. 2002)). In <u>Dunlap</u>, the Seventh Circuit consolidated for decision three appeals in which a prisoner challenged the denial or dismissal of his Rule 60(b) motion. 301 F.3d at 875. One of those prisoners, John Hunt, filed a Rule 60(b) motion based on <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), "while his request for a certificate of appealability from the district court's denial of his habeas corpus application based on a similar ground was pending in this court." <u>Dunlap</u>, 301 F.3d at 876. The Seventh Circuit concluded that the district court should have dismissed Hunt's Rule 60(b) motion as a second or successive habeas application barred by AEDPA. <u>See</u> <u>id.</u> Referring to <u>Dunlap</u> and other lower court decisions, the Supreme Court declared "[w]e think those holdings are correct." <u>Gonzalez</u>, 545

U.S. at 531. Thus, a Rule 60(b) motion that presents a claim for relief will still be considered a "second or successive" habeas application even if the first petition is pending on appeal.

Other courts have applied <u>Gonzalez</u> to conclude that the pendency of the first petition on appeal does not prevent a subsequent application for habeas relief from being considered "second or successive." In <u>Ochoa v. Sirmons</u>, for example, the Tenth Circuit held "that the pendency of an appeal from the denial of a first petition does not obviate the need for authorization of newly raised claims" under § 2244(b). 485 F.3d 538, 539 (10th Cir. 2007). There, while the denial of the prisoner's first federal habeas petition was still on appeal, the prisoner sought "to challenge his sentence on the basis that he is mentally retarded and hence ineligible for the death penalty" under <u>Atkins v. Virginia</u>, 536 U.S. 304 (2002). <u>Ochoa</u>, 485 F.3d at 539. Relying on <u>Whab v. United States</u>, 408 F.3d 116 (2d Cir. 2005), the prisoner argued "that authorization under § 2244(b) is unnecessary so long as his first habeas action has not been finally adjudicated on appeal." The court rejected the prisoner's argument, finding it to be "clearly precluded by general principles in our case law addressing various attempts to circumvent § 2244(b) requirements, particularly following the Supreme Court's decision in <u>Gonzalez v. Crosby</u>." <u>Ochoa</u>, 485 F.3d at 540 (full citation omitted). The court observed that "nothing in <u>Gonzalez</u> … or our other cases suggests that whether a Rule 60(b) motion or other procedural vehicle

may be used to circumvent § 2244(b) depends on the incidental fact that an appeal is or is not pending from the underlying habeas proceeding." <u>Id.</u> at 541. It reasoned:

> The approach advocated by Mr. Ochoa would greatly undermine the policy against piecemeal litigation embodied in § 2244(b). Multiple habeas claims could be successively raised without statutory constraint for as long as a first habeas case remained pending in the system. If the proper treatment of post-judgment proceedings in habeas, carefully explained in <u>Gonzalez</u> to prevent procedural circumvention of § 2244(b), left open an exception this broad, that point would have been made explicit in the statute or, at least, in the Supreme Court's primary decision implementing the statute.

<u>Id.</u> Thus, the court concluded that the prisoner's new <u>Atkins</u> claim was second or successive despite the pending appeal in the first habeas case. <u>Id.</u> And the Tenth Circuit is not alone in reaching such a conclusion. <u>See</u>, <u>e.g.</u>, <u>Terrell</u>, 141 F. App'x at 850–51 (concluding that under <u>Gonzalez</u>, the district court correctly treated the defendant's "motion to reopen and reduce sentence" as an unauthorized second or successive § 2255 motion, even though his appeal from the denial of his first § 2255 motion was pending).

Turning back to Petitioner, that his First Petition was pending on appeal when he filed his Second Petition does not prevent it from being considered "second or successive." If his Second Petition were a Rule 60(b) motion, it would be considered a second or successive habeas application because the First Petition was denied on the merits and the Second Petition presents two new challenges to the convictions and death sentence in the "wife murder" case. <u>See</u>

Gonzalez, 545 U.S. at 530–32; Dunlap, 301 F.3d at 876. The Second Petition, which Petitioner filed in a new civil case, is even more clearly a second or successive petition than if it were couched as a Rule 60(b) motion. See Panetti, 551 U.S. at 947 ("In the usual case, a petition filed second in time and not otherwise permitted by the terms of § 2244 will not survive AEDPA's 'second or successive' bar."); Burton, 549 U.S. at 153 (observing that a petition is generally "second or successive" when a petitioner has "twice brought claims contesting the same [sentence] imposed by the same judgment of a state court.").[13]

Nor does it matter that the First Habeas Case was before this Court on a limited remand when Petitioner filed the Second Petition. The limited remand concerned only equitable tolling and the merits of the First Petition were outside the scope of that remand. Nothing the Court decided regarding equitable tolling would have (or could have) changed the Court's decision on the merits of the First Petition. Thus, the pendency of the limited remand on equitable tolling in the First Habeas Case does not prevent the Second Petition from being considered "second or successive." See Sasser, 999 F.3d at 615

---

[13]     For what it is worth, several appeals courts have held that the second or successive bar applies once proceedings have concluded in the district court on the merits of the initial petition, even if the first petition is still pending on appeal. See Phillips v. United States, 668 F.3d 433, 435 (7th Cir. 2012), as amended on denial of reh'g and reh'g en banc (Feb. 21, 2012); Sasser v. Payne, 999 F.3d 609, 615 (8th Cir. 2021); Beaty v. Schriro, 554 F.3d 780, 783 & n.1 (9th Cir. 2009); Ochoa, 485 F.3d at 540. But some courts hold that the first habeas action is not final, and the second or successive bar does not attach, until any appeals in the first habeas action have been completed. See, e.g., Whab, 408 F.3d at 118 (decided one month before Gonzalez); United States v. Santarelli, 929 F.3d 95, 104–05 (3d Cir. 2019); Clark v. United States, 764 F.3d 653, 658 (6th Cir. 2014).

("Sasser's effort to bring new ineffective-assistance claims on remand constituted an unauthorized second or successive habeas petition that should have been dismissed."). This conclusion is bolstered by the Eleventh Circuit's order denying Petitioner's motion to relinquish jurisdiction to allow this Court to consider the two new claims for relief. (First Habeas Case, Doc. 246.) The Eleventh Circuit emphasized that its remand was strictly limited to the equitable tolling issue, did not concern the merits, and did not "vacat[e] the district court's dismissal of [the] petition with prejudice." Id. at 1–2 (citing Thomas VI, 795 F.3d at 1291–97, 1297 n.3). The court added:

> At present, the district court's judgment denying Mr. Thomas's initial petition remains undisturbed, and so he may not amend his pleadings under Federal Rule of Civil Procedure 15. See 28 U.S.C. § 2242; Fed. R. Civ. P. 15(a); Jacobs v. Tempur-Pedic Int'l, Inc., 626 F.3d 1327, 1344 (11th Cir. 2010); Nyland v. Moore, 216 F.3d 1264, 1266 (11th Cir. 2000). Instead, he may only add new claims pursuant to the authority in Federal Rule of Civil Procedure 60, and any new claim will be treated as a second or successive application. See U.S. ex rel. Atkins v. McInteer, 470 F.3d 1350, 1361 n.22 (11th Cir. 2006); Gonzalez v. Crosby, 545 U.S. 524, 531–32 (2005). But if we vacate the district court's judgment in this appeal and remand for further proceedings, then (assuming our ruling does not moot the new claims) Mr. Thomas's attempt to amend his petition would be governed by Rule 15, as his original petition proceedings would again be ongoing. Thus, the outcome of this appeal will provide a clear standard to govern any future amendment seeking to add new claims.

Id. at 2–3 (emphasis added). Thus, the Eleventh Circuit's order confirms that (1) the limited remand did not disturb the Court's judgment, and (2) as long as the judgment was undisturbed, any effort by Petitioner to add new claims would be treated as a second or successive application.

None of this is to say Petitioner is without a remedy. He may still apply to the Eleventh Circuit for authorization under § 2244(b) to file a second or successive habeas petition. But he may not avoid those restrictions with the filing of the Second Petition.[14]

## IV.   Conclusion

Having considered the Second Petition and the parties' briefs, it is **ORDERED:**

1.  Respondents' Motion to Dismiss the Second Petition as an unauthorized successive habeas petition (Doc. 24) is **GRANTED**.

2.  Petitioner's second Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Doc. 1) is **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

---

[14]     The Court could not skip over the complexities of the second or successive analysis to simply address the merits. "The bar on second or successive [petitions] is jurisdictional," In re Morgan, 717 F.3d 1186, 1193 (11th Cir. 2013), and a district court "may not assume jurisdiction for the purpose of deciding the merits of the case," Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007). Thus, the Court had to resolve whether the Second Petition is "second or successive"—and therefore whether the Court has jurisdiction––and the Court concludes it lacks jurisdiction.

3.  The Clerk will enter judgment dismissing the Second Petition (Doc. 1) without prejudice and close the file.[15]

**DONE AND ORDERED** at Jacksonville, Florida this 7th day of April, 2023.



Timothy J. Corrigan
TIMOTHY J. CORRIGAN
United States District Judge

lc 19
C:
Counsel of record
William Greg Thomas, FDOC # 311509

---

[15]     No COA is required to appeal the dismissal for lack of subject matter jurisdiction of a successive habeas petition. <u>Osbourne v. Sec'y, Fla. Dep't of Corr.</u>, 968 F.3d 1261, 1264 n.3 (11th Cir. 2020) (citing <u>Hubbard v. Campbell</u>, 379 F.3d 1245, 1247 (11th Cir. 2004)).